# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        CRIMINAL NO. 03-1616   JB

MICHAEL ANDREW POVIJUA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Formal Objection to Pre-Sentence Report and Sentencing Memorandum. The issue is whether there is support for the Court to find that the Defendant, Michael Andrew Povijua, committed the offense by the use of force as set forth in 18 U.S.C. § 2241 so that the base offense level is 16. Because the Court finds that the Defendant pled guilty to committing the offense by the use of force and that the facts support that plea, the Court will sustain the objection.

## FACTUAL BACKGROUND

On August 27, 2003, Povijua entered into a plea agreement with the United States of America. The Honorable Richard L. Puglisi, United States Magistrate, accepted the plea. On October 9, 2003, the United States received a copy of the Pre-Sentencing Report and Sentencing Memorandum that Mike H. Carrion, Senior United States Probation Officer, prepared.

On or about the week of October 13-17, 2003, the United States contacted Carrion by telephone regarding the calculation of the Total Offense Level on page seven of his prepared report.

1

Paragraph 31 of Carrion's report stated:

> 31.  Base Offense Level: Pursuant to 2A3.4(a)(3), as the offense was not committed by means set forth in 18 U.S.C. §§2241 (Aggravated Sexual Abuse) or 2242 (Sexual Abuse), the base offense level is 10.

It is the United States' position that the Court should set the assigned level pursuant to U.S.S.G. 2A3.4(a)(1), which reflects the use of force in the commission of the offense.

After some discussion, Carrion requested that the United States "informally" object to the Pre-Sentence Report and Sentencing Memorandum in writing. On October 21, 2003, the United States mailed and sent by facsimile transmission a letter to Carrion regarding its objections to the Report. See Letter from Marron Lee to Mike H. Carrion (dated October 21, 2003). During the same time period, the United States placed a rush order for a copy of the transcript of the Change of Plea hearing held on August 27, 2003. The United States received that transcript on November 4, 2003. See United States Formal Objection to Pre-Sentence Report and Sentencing Memorandum at 2 (Doc. 17). The United States immediately sent a facsimile of that transcript to Carrion. Id.

Carrion informed the United States that he was unable to speak with the victim in this matter and could not question her about Povijua's use of force. Carrion informed the United States that he was relying on the charging document and reports generated in this matter to calculate the base level offense. Carrion suggested that the United States file a formal motion in opposition to his report. The government filed its formal objections on November 7, 2003. The Court held Povijua's sentencing on November 12, 2003.

## **LEGAL ANALYSIS**

Povijua agrees with Carrion's calculation of the base level offense. Alternatively, Povijua states that, if the Court agrees with the United States' argument regarding the proper base offense

level under the Sentencing Guidelines, he moves pursuant to the fifth, sixth, and eighth amendments to the United States Constitution, Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3553(b), and Section 5K2.0 of the United States Sentencing Guidelines for a downward departure based on the unique combination of circumstances involved in this case.

## **BASE OFFENSE LEVEL**

The Probation Office's report and its conclusions rely on information that the United States Probation Office gathered and prepared. The United States believes that the Probation Office's report does not accurately reflect the conduct to which the Defendant admitted during his change of plea hearing. The United States argues that the correct base level should be 16 rather than 10. According to the application of the United States Sentencing Guideline (U.S.S.G.) 2a3.4(a)(1), should the defendant commit the offense by the means set for as described in 18 U.S.C. § 2241 (a) or (b), the base-level offense is a level sixteen (16).

There is evidence in the record to support the United States' contention. First, the Information that the United States filed on August 27th, and to which Povijua pled guilty, states that Povijua intentionally touched the victim in a sexual manner "by use of force." See Amended Information (Doc. __)(filed with the Court at sentencing on November 12, 2003). The Court is satisfied that Povijua knew to what he was pleading:

> THE COURT: The information in this case charges you with abuse of sexual contact. Have you had enough time to go over this charge as well as your case in general with your attorney?
>
> THE DEFENDANT: Yes.

Transcript of Proceedings at 3, lines 15-19. Povijua admitted four times during the change of plea that he committed the sexual act against a victim by use of force:

>    MS. LEE: Your Honor, if I might, prior to us going forward, I've noted, and Mr. Hannum has noted, there is a mistake in the information. It says that Jane Doe, a female Indian child, who was known to the Defendant, Jane Doe had obtained the age of 12. She was 14 years old. We would ask the Court to redact that she had not obtained the age of 12 years old. And put by use of force -- put, "And the sexual contact is the intentional touching," and at the end, "by use of force." The Defendant is being charged under 22-44(A), Subsection 1, not AC.
>
>    THE COURT: Mr. Povijua, is that your understanding that you're being charged with sexual contact of a female Indian child who was 14 and that this sexual contact was intentional and by use of force?
>
>    THE DEFENDANT: Yes.

Id. at 4, lines 7-24 (August 27, 2003)(emphasis added).

>    THE COURT: You've been charged with violation of 18 United States Code, Section 22-44(A). The elements of this offense are as follows: That on September the 3rd of 2001, you were physically present in Indian country here in New Mexico, and that on that date you knowingly engaged and attempted to engage in sexual contact with a female Indian child who was 14 years old, and that this sexual contact consisted of the intentional touching by use of force either directly or through the clothing of the genitalia or inner thigh of Jane Doe with the intent to humiliate, harass, degrade, arouse and gratify the sexual desire of any person. Do you understand the elements of the crime that you've been charged with?
>
>    THE DEFENDANT: Yes.

Id. at 8, lines 5-20 (emphasis added).

>    THE COURT: Did you have sexual contact that was intentional by the use of force?
>
>    THE DEFENDANT: Yes.

Id. at 9, lines 9-11. Judge Puglisi also found that there was a factual basis for the use of force element.

>    THE COURT: Very well. Does the United States wish a further factual basis?
>
>    MS. LEE: No, Your Honor. Well, yes, Your Honor. . . . And Mr. Povijua did rub his penis on skin-to-skin contact on the inner thigh until ejaculating while Jane

4

> Doe was struggling or attempting to stop him and push him away, and that's where the force comes in, Your Honor.
>
> THE COURT: Okay.  Mr. Povijua, are you ready to plead to the single count in the information?
>
> THE DEFENDANT: Yes.
>
> THE COURT: How do you wish to plead to the single count in the information, guilty or not guilty?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: All right. It is the finding of the Court in the case of United States v. Michael Andrew Povijua that the Defendant is fully competent and capable of entering an informed plea.  He is aware of the nature of the charge and the consequences of the plea, and his plea of guilty is not only voluntary, but supported by an independent basis of fact and each of the essential elements of the offense.  His plea is therefore accepted, and he is adjudged guilty of this offense.

Id. at 10, lines 23-24.  Neither Povijua nor his counsel objected to the factual basis that the United States presented at the plea hearing.

In the Addendum to the Presentence Report, the Probation Office addressed the United States' assertion of a factual basis for finding use of force and found that assertion unsupportable:

> Based on the investigative material which includes an interview with the victim, the United States Probation Office believes the conduct in this case does not rise to the level of use of force.  Although the government reported there was a struggle and attempts to stop the defendant and push him away, the victim's statement to agents do [sic] not reflect any action on the part of the victim other than holding her shorts and underwear to keep the defendant from pulling them down.

Addendum to PSR at 3.

As an initial matter, once Povijua pled guilty to the use of force element, the court should not look behind that plea at the sentencing stage.  In United States v. Gray, 182 F.3d 762 (10th Cir. 1999), the defendant contended on appeal that the United States did not meet its burden, during his

5

plea colloquy and at sentencing, of proving that the conspiracy for which he was convicted involved "crack," instead of cocaine powder. See id. at 767. The sentence for crack is significantly stiffer than for cocaine powder, and the United States has the burden at sentencing of proving the drug involved. See id. His conviction was not predicated on whether the particular controlled substance was crack or cocaine powder; that distinction is only relevant for sentencing purposes. See id.

The defendant in United States v. Gray admitted that the substance involved was either crack or cocaine powder, and he did not contend that he would have pleaded innocent had his counsel objected to the ambiguous terms of the factual basis of the plea during the colloquy. See id. He did not allege he would not have plead guilty had he known of the disparate sentences for crack and cocaine powder. See id. at 76. The United States Court of Appeals for the Tenth Circuit said it was too late in sentencing to require the United States to prove the drug involved to enhance a sentence over that provided by the conviction itself:

> Although appellant's counsel did not put the government to its burden at sentencing, by that time, it was too late. Count One of the indictment specified "cocaine base, 'crack,' and appellant pleaded guilty to that count. Earlier, he had admitted in his Petition to Enter Guilty Plea that he had conspired to possess and distribute "crack cocaine base (crack)," . . . and admitted at his plea hearing that he dealt with crack . . . . [Footnote 9] These admissions relieve the government of any burden it had at sentencing to show that the drug involved was crack. Cf. [United States v.] Glover, 97 F.3d [1345,] at 1347 [(10th Cir. 1996)]("We emphasize that neither the indictments nor the pleas in this case went beyond the requisite statutory elements bu specifying the type of methamphetamine involved; if they had, subsequent (re)litigation of the issue might well have been precluded.")(citations omitted); see also United States v. Bush, 70 F.3d 557, 562-63 (10th Cir. 1995)(defendant's admissions in please agreement and at plea hearing and trial of co-conspirators sufficient to support sentence based on crack).

182 F.3d at 768. In footnote 9, the Tenth Circuit stated:

> Later at the plea hearings when discussing the factual basis for the plea, the parties and court used the words "cocaine base" and "cocaine" as well as "crack." In light

6

of appellant's earlier explicit admissions that the substance was "crack," this later colloquy does not undermine the evidence that it was crack.

See id. at 768 n.9.

At the sentencing hearing in this matter, the parties did not agree whether the "use of force" is a substantive element of the crime or a sentencing enhancement factor. If it is an element of the offense, then Povijua plead guilty to the element, and United States v. Gray suggests that the Court should not look behind the plea at sentencing. If use of force is a sentencing factor, then United States v. Gray is on-point, and it is too late to require the United States to prove use of force given Povijua's plea.

In any case, while the Court does not believe that it needs at sentencing to put the United States to the burden of proving "use of force," the United States has presented evidence and met its burden. First of all, the case law suggests that the use of force may be minimal and still satisfy the conviction. In United States v. Allery, 175 F.3d 610 (8th Cir. 1999), the United States Court of Appeals for the Eighth Circuit stated:

> The facts of the case were certainly most unusual, and we rehearsed them in detail in our first opinion in this case: Mr. Allery forced himself on his victim while she was asleep, and when she awoke she pushed him away and freed herself. We upheld the conviction on the ground that the jury was free to infer from the facts just recited that Mr. Allery "was physically restraining [the victim] by lying on top of her and resisting her attempts to push him away while at the same time he was having sexual intercourse with her." This, we held, was "sufficient to constitute force under the statute." *United States v. Allery*, 139 F.3d [609, 612 (8th Cir.) cert. denied, 524 U.S. 962 (1998)].
>
> * * * *
>
> Although the amount of force that was used to commit the relevant crime was, as we held, sufficient to sustain a conviction under the statute, it was, we think, virtually the least amount of force that could do so.

7

175 F.3d at 612-613. The Tenth Circuit has also indicated that there is not much force needed to establish use of force. In <u>United States v. Yates</u>, 22 F.3d 981 (10th Cir. 1994), the Tenth Circuit states: "A medical examination of the girl indicated that attempted penetration of her vagina had occurred, and that she had sustained minor cuts to her gums and her mouth, had been held during the sexual attack." <u>Id</u>. at 984.

In <u>United States v. Reyes Pena</u>, 216 F.3d 1204 (10th Cir. 2000), the Tenth Circuit addressed whether the United States had introduced facts sufficient to support an enhancement pursuant to §2A3.1(b)(1). <u>See id</u>. at 1211. The defendant contended that, because he did not use "the brute force associated with rape," and his victim did not fear for her life, such an enhancement was not permissible. <u>Id</u>. The Tenth Circuit pointed out that the Guidelines provided no statutory definitions of "force." <u>Id</u>. But the court looked to two of its unpublished dispositions and precedents from other circuits as instructive. <u>See id</u>. The Tenth Circuit held that the §2A3.1(b)(1) enhancement is justified by the factual finding that the perpetrator used "'such physical force as is sufficient to overcome, restrain or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim.'" <u>United States v. Yazzie</u>, 153 F.3d 730 (Table), 1998 WL 276362, at *3 (10th Cir. May 27, 1998)(quoting <u>United States v. Weekley</u>, 130 F.3d 747, 754 (6th Cir. 1997)(quoting <u>United States v. Fire Thunder</u>, 908 F.2d 272, 274 (8th Cir. 1990))). That is, a force enhancement is appropriate when "'the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact.'" <u>United States v. Reyes Pena</u>, 216 F.3d at 1211 quoting <u>United States v. Lauck</u>, 905 F.2d 15, 18 (2d Cir. 1990)); <u>U.S. v. Fulton</u>, 987 F.2d 631, 633 (9th Cir. 1993)(same). The Tenth Circuit stated that "force may be inferred by such facts as disparity in coercive power, such as that between an adult and a child." <u>United Sates</u>

v. Reyes Pena, 216 F.3d at 1211 (citing United States v. Pewenofkit, 173 F.3d 865 (Table), 1999 WL 169429, at *3 (10th Cir. March 29, 1999).

The Tenth Circuit, in United States v. Talk, 13 F.3d 369 (10th Cir. 1993), rejected the district court's decision not to apply an upward adjustment based on the use of force in connection with a rape. The district court held that such an upward adjustment would apply only "if there existed some degree of force that exceeded the 'average' force necessary to rape someone." Id. at 372. The Tenth Circuit rejected this reasoning and clarified that the upward adjustment "is mandatory for all defendants convicted under 18 U.S.C. § 2242." Id.

Povijua admitted several times before Judge Puglisi that he committed this offense by the use of force. Moreover, at the sentencing, the Bureau of Indian Affairs officer who interviewed the victim testified that the victim engaged in a "struggle" with Povijua and felt "threatened" by Povijua. The officer further testified that Povijua knelt over the victim trapping her against the mattress as he attempted to remove her clothing against her will and then proceeded to rub his penis against her leg and ejaculate on her while still kneeling on top of her.

The facts here are similar to those in United States v. Bordeaux, 997 F.2d 419 (8th Cir. 1993), in which the child stated that Mr. Bordeaux would tell her to go into his room, to lie down on her side on the bed, and to look at the wall. See id. at 420. The child stated that Mr. Bordeaux would then pull down her pants and have anal intercourse with her. See id. She never said no because she knew Mr. Bordeaux would punish her for saying no to him. See id. The Eighth Circuit thought this evidence was enough to establish "use of force":

> We hold that the victim's statements, which were admitted into evidence . . . are sufficient to establish force in the circumstances of this case. The apparent disparity in size between Mr. Bordeaux and the victim (200 pounds versus a child who is "not

9

. . . obese" . . .), might be enough, in itself, to establish "'a restraint . . . that was sufficient that the [child] could not escape the sexual contact.'"

Id. at 421 (quoting United States v. Lauck, 905 F.2d at 18).

Therefore, Povijua committed the offense by the means set forth in 18 U.S.C. § 2241(a), which states that it is Aggravated Sexual Abuse for a defendant to knowingly cause another person to engage in a sexual act by using force against that person. The crime that Povijua committed, and admitted to committing, fits within the Base Level Offense U.S.S.G. 2A3.4(a)(1) and not (a)(3). Accordingly, because Povijua did commit the charged act by use of force under U.S.S.G. 2A3.4(a)(1), the United States' objection to the Total Offense level as Carrion calculates it is well taken.

In applying U.S.S.G. 2A3.4, if the Court determines the base level offense under subsection (a)(1), then the Court must adjust the offense level computation by U.S.S.G. 2A3.4(b)(2), based upon the age of the victim at the time the act occurred. As the child in this matter was over the age of twelve, but had not obtained the age of sixteen, the Court will adjust the offense level by an additional two levels. In conclusion, the Court finds that Povijua's Base Offense Level is 16, with an additional 2 points for the age of the victim, for an adjusted offense level of 18. The Court notes that the government did not object to the reduction for acceptance of responsibility so the adjusted offense level of 18 will be reduced by 3 for a Total Offense Level of 15.[1]

---

[1] The Probation Office disputes the Government's objection to the base offense level in part because the Defendant pled guilty under 18 U.S.C. § 2244 and not specifically under 18 U.S.C. § 2241, the Section that provides the basis for a base offense level of 16 because of the use of force. Neither the Government nor the Defendant have this same concern. The Court finds that Section 2244(a)(1) specifically refers back to Section 2241(a)(1) such that a defendant pleading guilty under the former must plead guilty to the elements of the latter. Thus, because the Defendant here pled guilty to abusive sexual contact under Section 2244(a)(1), he necessarily pled guilty to committing that act "by using force" as described in Section 2241(a)(1).

**REQUEST FOR DOWNWARD DEPARTURE**

Povijua argues that, if the Court agrees with the United States' argument that his base offense level should be 16, this Court should grant a downward departure, as there are, in this case, mitigating circumstances of a kind, and to a degree, that the Sentencing Commission did not adequately take into consideration. Povijua argues that the lack of evidence of force is itself a mitigating circumstance that the Guidelines do not adequately take into consideration in the formulation of the base offense level. Povijua also contends that his age at the time of the offense mitigates the severity of the offense.

Povijua's date of birth is November 1, 1982. In September of 2001, Povijua was eighteen years old. The victim, Christine P., was born on June 23, 1987, making her approximately four years and four months younger than Povijua. Under 18 U.S.C. § 2241(c), the victim of any offense must be "at least 4 years younger than the person so engaging [in the sexual act]." Povijua maintains that the fact that he was so young at the time of the offense, coupled with the fact that the conduct itself fits only marginally under the applicable statute, is a further mitigating circumstance that counsels in favor of a downward departure.

Before a sentencing court may depart from an otherwise correctly determined Guideline sentencing range because the case is outside the Guideline's heartland, it must determine whether the contemplated departure is expressly forbidden, encouraged, or discouraged by the Sentencing Commission. The Court is not convinced that the presence of marginal evidence or age authorize a departure under the Guidelines. United States v. Talk, 13 F.3d at 371 ("[F]actors which contribute to one's sophistication such as age, education, and socio-economic status are mentioned as factors

that may not serve as a basis for a departure.).[2]  In any case, the Court does not depart because it does not believe departure is warranted under the facts and circumstances here.  The Court has trouble distinguishing the case from many others before the Court.  This case fits within the heartland of cases.

Even if departure were authorized under the facts of this case, the Court would exercise its discretion not to depart.  Povijua's Presentence Report contains accusations that he sexually abused three young girls, all of whom were his relatives.  Had the United States been able to prove the other assaults occurred, he might have been subject to the guideline application of 4B1.5, Repeat and Dangerous Sex Offender Against Minorities.  This guideline would have subjected Povijua to an offense level of 22.  With an adjustment for acceptance of responsibility, the offense level would have been 19, and with a criminal history category of I, would have established a guideline imprisonment range of 30-37 months.

The Court believes that Povijua has a serious alcohol problem and a propensity to sexually assault young girls.  With the enactment of the PROTECT Act, Congress and the Sentencing

---

[2] C.f. United States v. Allery, 175 F.3d at 615 (Hansen, Circuit Judge, concurring in part, dissenting in part)("Because USSG § 2A3.1 is designed to apply in cases ranging from those where the absolute minimum amount of force necessary to violate the sexual abuse statutes has been employed by the perpetrator up to and including those cases involving the maximum application of force to the victim, i.e., murder during the commission of the offense, see USSG § 2A3.1(c), the structure and theory of the Guideline demonstrate that the factor of the amount of force involved in a particular sexual abuse crime has been accounted for by the Sentencing Commission in setting the base offense level and in establishing the specific offense characteristics and cross-references contained in § 2A3.1. Consequently, no downward departure based on the fact that only the minimum amount of force necessary to violate the statute was employed is permitted . . . . Stated another way, the "heartland" of cases covered by this Guideline is, as far as the force factor is concerned, as broad as the range of force that may be employed to accomplish the crime . . . . While a sentencing judge can consider the fact that only the minimum force necessary to violate the statute was used against the victim to justify a sentence at the bottom of the identified guideline range, the judge cannot use minimum force as a basis for departure from that range.").

Commission have mandated harsher punishments for persons who commit crimes against children. As such, a downward departure is not appropriate.

**IT IS ORDERED** that the United States' Objection to the Pre-Sentence Report and Sentencing Memorandum is sustained and the Total Offense Level computation is adjusted to 15. The Court denies the Defendant's Motion for a Downward Departure.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

David C. Iglesias
  United States Attorney
Marron Lee
   Assistant United States Attorney
Albuquerque, New Mexico

    *Counsel for the United States*

Mr. D. Eric Hannum
Albuquerque, New Mexico

    *Counsel for Michael Andrew Povijua*